TRAXLER, Circuit Judge,
dissenting:
I respectfully dissent from this court’s denial of Capacchione’s and Grant’s motions to reconsider their claims to attorneys’ fees for the role they played as private attorneys general in achieving a declaration of unitary status. As a result of this declaration, CMS must have a race-neutral student assignment plan in place no later than the 2002-2003 school year unless its use of race is narrowly tailored to serve a compelling governmental interest. The plaintiff-intervenors have prevailed against CMS and have obtained a decree that alters the conduct of CMS toward all children attending public school in Mecklenburg County. Yet, this court vacates the district court’s fee award on the ground that the plaintiff-intervenors have not prevailed.
School desegregation cases are unique in the manner in which they proceed. There are two basic steps in the court process to obtain unitary status. In the first part, the plaintiffs seek to impose federal court control over the school system and to have federal courts dictate procedures for the operation of the schools. When the court-ordered procedures have worked, the second part begins with the parties returning to district court to obtain a declaration of unitary status and the concomitant removal of federal court oversight.
This case began in 1965 when the original Swann plaintiffs brought a § 1983 *817 action to convert CMS “into a unitary nonracial system wherein educational opportunities offered by [the board] are made available to all students without regard to race or color.” J.A. XXXIII-16,-162. The Swann plaintiffs succeeded in having CMS placed under court order and participated in proceedings whereby the district court adopted a sweeping desegregation plan. In 1975, the case was removed from the active docket and the Swann plaintiffs were deservedly and properly awarded $204,072.33 in fees and costs for their service as private attorneys general in the first phase of the desegregation effort.
For the most part, this case remained inactive until 1997, when Capacchione challenged CMS’s magnet schools program and, shortly thereafter, amended her complaint to seek a declaration of unitary status as well. Swann was reactivated and Capacchione intervened in that action. Grant then moved for a declaration of unitary status and also intervened in the Swann litigation. Thus began the second part of the process.
The Swann plaintiffs, however, did not want the second and final phase of the judicial process to occur, so they fought a finding of unitary status. Capacchione and Grant had to step in and prove to the district court that what the Swann plaintiffs originally sought in their lawsuit under § 1983 had, in fact, been achieved— that what had been started in the 1960s had finally been completed and the vestiges of segregation removed to the extent practicable. And like the Swann plaintiffs, who received a fee award for work done before the case was removed from the active docket, the plaintiff-intervenors now seek, and are entitled to, their attorneys’ fees.
No member of the court doubts that the Swann plaintiffs would be entitled to fees under § 1988 had they been the ones to successfully move for a declaration of unitary status. Yet in spite of the same measure of success by the plaintiff-interve-nors, we deny them their fees. By judicial fiat, plaintiff-intervenors in school desegregation cases have been written out of § 1988. Should another case like this arise where the original plaintiffs and the school board are content to let the desegregation order remain in place long after the dual system has been dismantled, parents demanding a return of local control will be helpless. As the present case demonstrates, a declaration of unitary status can be expensive ($1.49 million). I have no doubt that if our decision had been on the books in 1997 neither Capacchione, nor Grant, nor virtually any other public school parent in Mecklenburg County could have afforded to seek a removal of the federal courts from control of the school system. I find it ironic that in affirming the district court’s declaration of unitary status but denying the prevailing parties their fees, we simultaneously condemn other school districts in our circuit to prolonged and unnecessary federal court control.
Finally, while unfortunate that the school board should have to pay such a large award, this is a risk it took when it decided to fight the unitary status determination — not unlike the ill-fated decision it made in the 1960s to fight the desegregation effort to begin with, when we made it pay the fees of the original Swann plaintiffs. For attorneys’ fees purposes, this court has decided that one party can get its fees under § 1988 for forcing the school board to abide by the law while the other cannot. Therefore, I respectfully dissent.
Judge WIDENER and Judge WILKINS have authorized me to indicate that they join in this dissent.